**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF LOUISIANA**
**ALEXANDRIA DIVISION**

JOHN DOE                                           CIVIL ACTION NO. 25-1508

VERSUS                                             JUDGE EDWARDS

CAM LOGISTICS LLC ET AL                 MAG. JUDGE PEREZ-MONTES

## MEMORANDUM RULING AND ORDER

Before the Court are two Motions to Dismiss. Joshua Breithaupt ("Breithaupt") filed the first (R. Doc. 5). CAM Logistics, LLC ("CAM") filed the second (R. Doc. 8). John Doe ("Plaintiff") opposed both motions. *See* R. Docs. 12 and 15. Breithaupt replied, *see* R. Doc. 17, and CAM replied. *See* R. Doc. 18.

Having carefully considered the parties' memoranda and the applicable law, Breithaupt's Motion is **GRANTED**, and CAM's Motion is **GRANTED IN PART** and **DENIED IN PART**.

## BACKGROUND[1]

This case stems from the alleged discrimination and harassment Plaintiff suffered during his employment with CAM. On February 2, 2023, Plaintiff began working at CAM as a temporary warehouse employee. *See* R. Doc. 1-2 at ¶ 3. Soon after, Plaintiff alleges that his sexual orientation became known throughout CAM's workplace. *See id.* at ¶ 4. He was then assigned multiple overtime shifts with "physically laborious" tasks that Plaintiff alleges were assigned because of his sexual

---

[1] The factual background below comes "from the operative […] complaint because, at this stage, we accept all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff...." *Nevarez v. Dorris*, 135 F.4th 269, 271 n.1 (5th Cir. 2025) (citation modified).

orientation. *See id.* at ¶ 5. Despite this, Plaintiff accepted a position as a shift supervisor that was not a temporary position in July 2023. *See id.*

Sometime between April and May of 2023, Plaintiff alleges that his supervisor, Raymond Ellis ("Ellis"), asked him to arrive to work earlier, which he did. *See id.* at ¶¶ 7–8. During one encounter, Ellis purportedly inquired into Plaintiff's sexual orientation and made several statements that Plaintiff interpreted as sexual advances. *See id.* at ¶ 8. After declining these alleged advances, Plaintiff asserts that Ellis pursued him into his office and CAM's break room, where Ellis forced Plaintiff to perform oral sex. *See id.* at ¶ 9. Thereafter, Plaintiff states that Breithaupt, CAM's General Manager, switched him to the day shift—the same shift as Ellis at Ellis' request—where Ellis continued to force Plaintiff to perform oral sex for several months. *See id.* at ¶¶ 10–11. Ellis allegedly forced Plaintiff to perform oral and anal sex repeatedly between April 2023 and November 2024. *See id.* at ¶¶ 11–13. On December 18, 2024, Plaintiff filed a Protective Order against Ellis. *See id.* at ¶ 20. Once CAM received the order, Plaintiff alleges that no further sexual harassment occurred. *See id.*

During his time at CAM, Plaintiff states that he and other coworkers reported the sexual harassment Plaintiff experienced to CAM—specifically to Breithaupt and CAM's Vice President Patrick Shea ("Shea"), but his complaints went unaddressed. *See id.* at ¶¶ 21, 23. Plaintiff further alleges that other coworkers experienced and reported similar sexual harassment, and that their complaints were likewise ignored. *See id.* at ¶ 22. Specifically, on October 25, 2024, Plaintiff contacted Breithaupt by

text and phone to discuss the sexual harassment and rumors surrounding it. *See id.* at ¶¶ 25–26. Breithaupt, however, allegedly brushed off the rumors as a joke. *See id.* at ¶ 26. Despite this alleged treatment, Plaintiff remained with CAM because he feared for his safety and that he would be fired if he resisted Ellis' advancements. CAM also offered a higher salary than most opportunities in the area. *See id.* at ¶ 14.

In 2024, Plaintiff expressed interest in three higher-level positions at CAM. *See id.* at ¶¶ 15–16, 18. According to Plaintiff, CAM filled these positions with heterosexual candidates whom Plaintiff contends were less qualified. *See id.* Then, Plaintiff alleges that CAM required him to work overtime at a new warehouse that included tasks not historically associated with Plaintiff's position. *See id.* ¶ 17. However, Plaintiff alleges that his other heterosexual coworkers were not forced to work such hours. *See id.* Plaintiff further states that Shea informed Plaintiff that he would be terminated if he did not work the overtime hours. *See id.* In addition to working more hours, Plaintiff asserts that he was directed to terminate two temporary employees whom he believes had reported the sexual harassment allegations. *See id.* at ¶ 27. But, according to Plaintiff, he was later required to rehire these employees due to a purported arrangement between CAM and a contractor, who also requested that these employees be removed from Ellis' oversight. *See id.* at ¶ 28.

Based on these events and the harm he suffered, Plaintiff filed suit on September 22, 2025, in the 9th Judicial District Court, Parish of Rapides against CAM, Breithaupt, Ellis, and Shea. *See generally* R. Doc. 1-2. Plaintiff alleges claims of sexual harassment under Title VII of the Civil Rights Act of 1964 ("Title VII") and

Louisiana Employment Discrimination Law ("LEDL") and various state tort claims. *See* R. Doc. 1-2 at ¶¶ 31–38. CAM and Breithaupt removed the case to this Court on October 8, 2025, *see* R. Doc. 1, and now seek to dismiss Plaintiff's claims. *See* R. Docs. 5 and 8.

## **RULE 12(b)(6) STANDARD**

Once a case is removed to federal court, "federal pleading standards control." *Pena v. City of Rio Grande City*, 879 F.3d 613, 617 (5th Cir. 2018). To survive a Rule 12(b)(6) motion to dismiss, a plaintiff must plead "enough facts to state a claim [for] relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). The plausibility threshold requires "enough heft" to indicate to the Court that the party is entitled to the relief pled. *Id.* at 557. A complaint attacked by Rule 12(b)(6) does not need detailed factual allegations but requires more than labels and conclusions. *Id.* at 555. A "formulaic recitation of the elements of a cause of action will not do." *Id.* When evaluating a pleading, courts must accept all factual allegations as true. *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007). However, courts need not accept legal conclusions as facts. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "[A] well-pleaded complaint may proceed even if it strikes [the Court] that actual proof of those alleged facts is improbable…." *Twombly*, 550 U.S. at 556. However, "factual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555.

<u>**LAW AND ANALYSIS**</u>

**I.    Plaintiff's Claims Against Breithaupt**

Breithaupt moves to dismiss Plaintiff's claims based on Plaintiff's failure to plead any claim—employment discrimination or state tort claims—against him. *See* R. Doc. 5-1 at 1. Breithaupt also seeks attorneys' fees based on the alleged frivolousness of Plaintiff's Title VII and LEDL claims. *See id.* In opposition, Plaintiff focuses exclusively on his intentional infliction of emotional distress ("IIED"), negligent infliction of emotional distress ("NIED"), and other negligence claims. *See* R. Doc. 15 at 1–2.

**A. Title VII and LEDL**

Breithaupt argues that, as an individual employee of CAM, he cannot be held liable under Title VII or the LEDL. *See* R. Doc. 5-1 at 4–5. We agree. Title VII protects employees from their employer's unlawful actions. *See Thompson v. N. Am. Stainless, LP*, 562 U.S. 170, 178 (2011). A Title VII employer is defined as "a person engaged in an industry affecting commerce who has fifteen or more employees for each working day in each of twenty or more calendar weeks in the current or preceding calendar year, and any agent of such person …." *See* 42 U.S.C. § 2000e(b). The Fifth Circuit has repeatedly held that Title VII does not impose individual liability. *See, e.g., Smith v. Amedisys Inc.*, 298 F.3d 434, 448–49 (5th Cir. 2002) ("This circuit has held that there is no individual liability for employees under Title VII."); *Ackel v. Nat'l Commc'ns, Inc.*, 339 F.3d 376, 381 n.1 (5th Cir. 2003) ("Individuals are not liable

under Title VII in either their individual or official capacities."); *Bellue v. Gautreaux*, 782 Fed. Appx. 350, 351 n.1 (5th Cir. 2019) ("Individuals are not subject to Title VII.").

Nor is individual liability available under the LEDL. *See Dyas v. City of Shreveport*, No. 16-1607, 2017 WL 3711898, at *6 (W.D. La. Aug. 28, 2017); *Aronzon v. Southwest Airlines*, 2004 WL 57079, at *5 (E.D. La. Jan. 9, 2004) ("Louisiana employment discrimination laws do not expose co-employees or supervisors to liability."); *Minnis v. Bd. of Sup'rs of Louisiana State Univ. & Agric. & Mech. Coll.*, 972 F. Supp. 2d 878, 889 (M.D. La. 2013) ("[L]ouisiana's antidiscrimination law provides no cause of action against individual employees, only against employers.") (citations omitted); *Hilliard v. Par.*, 991 F. Supp. 2d 769, 777–78 (E.D. La. 2014) (citations omitted).

Further, Plaintiff appears to concede, and thus abandon, his Title VII and LEDL claims against Breithaupt, as he does not address them in his opposition memorandum. *See Stonewater Roofing Co., LCC v. Merryton*, LLC, No. 22-1048, 2022 WL 17324447, at *4 (W.D. La. Nov. 29, 2022). Accordingly, insofar as Plaintiff asserts claims under Title VII and LEDL against Breithaupt, those claims are dismissed.

### B. Intentional Torts

Plaintiff asserts three intentional tort claims against Breithaupt: battery, assault, and IIED. *See* R. Doc. 1-2 at ¶ 37. Breithaupt contends that each claim is inadequately pled. *See* R. Doc. 5-1 at 5–6. We discuss each below.

### 1. Battery and Assault

In Louisiana, a battery is a "harmful or offensive contact with a person, resulting from an act intended to cause the plaintiff to suffer such a contact." *Caudle v. Betts*, 512 So. 2d 389, 391 (La. 1987). "An assault occurs when an intentional threat of battery, or harmful or offensive contact, places one in reasonable apprehension of receiving an injury." *Gressett v. Sw. Airlines Co.*, 216 F. Supp. 3d 743, 750 (E.D. La. 2016) (citations omitted). Plaintiff alleges no harmful or offensive contact or reasonable apprehension of such by Breithaupt. *See generally* R. Doc. 1-2. Nor does Plaintiff address either tort in his opposition, effectively abandoning these claims. *See Stonewater*, 2022 WL 17324447, at *4. Thus, to the extent that Plaintiff alleges battery or assault claims against Breithaupt, those claims are dismissed.

### 2. Intentional Infliction of Emotional Distress

To establish an IIED claim, a plaintiff must establish the following: "(1) that the conduct of the defendant was extreme and outrageous; (2) that the emotional distress suffered by the plaintiff was severe; and (3) that the defendant desired to inflict severe emotional distress or knew that severe emotional distress would be certain or substantially certain to result from his conduct." *White v. Monsanto Co.*, 585 So. 2d 1205, 1209 (La. 1991). This standard is demanding. "The conduct must be so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious and utterly intolerable in a civilized community." *Id.* This does not include and, thus, liability cannot be assessed to "mere insults, indignities, threats, annoyances, petty oppressions, or other

trivialities." *Id.* As to severity, "[t]he distress suffered must be [so extreme] that no reasonable person could be expected to endure it." *Id.* at 1210. Lastly, the defendant must intend to cause this severe emotional distress and nothing less. *Id.*

Plaintiff asserts that Breithaupt's failure to investigate the allegations against Ellis constitutes extreme and outrageous conduct that Breithaupt should have known would cause severe emotional distress. *See* R. Doc. 15 at 4. But the conduct complained of—failure to investigate—is more akin to "mere insults, indignities, threats, annoyances, petty oppressions, or other trivialities," *see White*, 585 So. 2d at 1209, which fall short of the demanding standard for an IIED claim. *See Martin v. Am. Midstream Partners, LP*, 386 F. Supp. 3d 733, 742 (E.D. La. 2019) ("[T]he standard for stating a claim of IIED against an employer requires that a plaintiff show more than a single failure to investigate."). And "in a workplace setting," Louisiana courts limit an IIED claim "to cases which involve a pattern of deliberate, repeated harassment over a period of time[,]" *see Nicholas v. Allstate Ins. Co.*, 765 So. 2d 1017, 1026 (La. 8/31/00), which is not the case as it pertains to the factual allegations against Breithaupt. Thus, Plaintiff's IIED claim against Breithaupt is dismissed.

### C. Negligence Claims

Breithaupt next argues that Plaintiff fails to state an NIED claim against him because workers' compensation is Plaintiff's exclusive remedy. *See* R. Doc. 5-1 at 6–7. Louisiana does not specifically recognize an independent tort of NIED. *See Collett v. Weyerhaeuser Co.*, 2021 WL 5411330, at *5 (E.D. La. May 7, 2021), *aff'd*, 2022 WL

8

2387352 (5th Cir. July 1, 2022). "[H]owever, it is now well-established that [a] plaintiff may recover for [NIED] unaccompanied by physical injury in certain situations." *See id*. For an NIED claim, a plaintiff must allege the following:

> (1) the defendant had a duty to conform his or her conduct to a specific standard of care (the duty element); (2) the defendant failed to conform his or her conduct to the appropriate standard (the breach of duty element); (3) the defendant's substandard conduct was a cause-in-fact of the plaintiff's injuries (the cause-in-fact element); (4) the defendant's substandard conduct was a legal cause of the plaintiff's injuries (the scope of liability or scope of protection element); and, (5) actual damages (the damages element).

*Spencer v. Valero Ref. Meraux, L.L.C.*, 356 So. 3d 936, 949 (La. 1/27/23) (citation omitted). "A negative answer to any of those inquiries results in a determination of no liability." *Id*. In addition, "a plaintiff must prove the especial likelihood of genuine and serious mental distress, arising from the special circumstances, which serves as a guarantee that the claim is not spurious." *Id*. (citation modified).

The Louisiana Workers' Compensation Act ("LWCA") "furnishes employees a right to workers' compensation for personal injuries sustained 'in the course of … employment' …" but "makes workers' compensation an employee's exclusive remedy." *See Rolls on behalf of A. R. v. Packaging Corp. of Am. Inc.*, 34 F.4th 431, 439 (5th Cir. 2022) (quoting La. R.S. § 23:1031(A)) and La. R.S. § 23:1032(A)(1)(a)). The exclusive remedy provision contains an exception for intentional acts, *see* La. R.S. § 23:1032(B), which must be narrowly construed. *See Chiasson v. Hexion Specialty Chems., Inc.*, No. 11-0959, 2012 WL 3683542, at *6 (E.D. La. Aug. 27, 2012) (A "plaintiff's burden for showing the elements of an employer's intentional act within the meaning of the statutory exception is exacting, and Louisiana courts, as well as federal courts sitting

in diversity, have consistently noted that the intentional act exception is to be narrowly interpreted.") (citations omitted).

Here, Plaintiff's claim for NIED is barred by the LWCA because it is the exclusive remedy to recover against an employer or his co-employees, such as Breithaupt, for workplace injuries. *See Carrier v. Grey Wolf Drilling Co.*, 776 So. 2d 439, 441–42 (La. 1/17/01). Plaintiff argues that the LWCA does not apply here because Breithaupt's conduct falls under the intentional act exception. *See* R. Doc. 15 at 5. He further asserts that Breithaupt knew to a substantial certainty that the purported hostile environment would cause severe emotional distress if he failed to investigate the sexual harassment allegations. *See id.* Not so. Breithaupt's mere knowledge of a risk Plaintiff may have suffered emotional distress at CAM's workplace is not an intentional act. *See Walker v. Apple Studios Louisiana, LLC*, No. 23-168, 2024 WL 347893, at \*5 (M.D. La. Jan. 30, 2024) ("Mere knowledge and appreciation of risk alone do not constitute intent.") (citing *Williams v. Gervais F. Favrot Co.*, 573 So. 2d 533 (La. App. 4 Cir. 1991), *writ denied*, 576 So. 2d 49 (La. 1991)); *Reeves v. Structural Pres. Sys.*, 731 So. 2d 208, 212 (La. 3/12/99) ("Believing that someone may, or even probably will, eventually get hurt if a workplace practice is continued does not rise to the level of an intentional act, but instead falls within the range of negligent acts that are covered by workers' compensation."). Accordingly, the negligence claims asserted against Breithaupt are dismissed.

### D. Civil Conspiracy

Breithaupt also moves to dismiss Plaintiff's civil conspiracy claim. *See* R. Doc. 5-1 at 7. Louisiana Civil Code article 2324(a) provides, "[h]e who conspires with another to commit an intentional or willful act is answerable, in solido, with that person, for the damage caused by such act." "Operationally, civil conspiracy assigns liability for an underlying unlawful act to a person who acted in concert with the direct tortfeasor." *Doe v. Mckesson*, 71 F.4th 278, 287 (5th Cir. 2023). To establish a civil conspiracy in Louisiana, a plaintiff must allege "that an agreement existed to commit an illegal or tortious act, which act was actually committed, which resulted in the plaintiff's injury, and there was an agreement as to the intended outcome or result." *Obienu v. Algiers Charter Sch. Ass'n, Inc.*, No. 25-417, 2026 WL 25094, at *8 (E.D. La. Jan. 5, 2026) (citations omitted). Plaintiff does not allege that Breithaupt agreed with anyone to commit any tort, which is fatal to a civil conspiracy claim. *See Doe*, 71 F.4th at 287; *Tran v. Gulf Coast Bank & Tr. Co.*, No. 24-1933, 2026 WL 878459, at *26 (E.D. La. Mar. 31, 2026) (Because "Plaintiffs' Complaint make[s] no allegation that Defendants entered into an agreement to defraud Plaintiffs[,] … Plaintiffs cannot successfully state a civil conspiracy claim …."). And Plaintiff does not address his civil conspiracy claim in his Opposition. *See generally* R. Doc. 15. Accordingly, Plaintiff's civil conspiracy claim against Breithaupt is dismissed.

### E. Request for Attorneys' Fees

Generally, "litigants must pay their own attorney's fees." *Stover v. Hattiesburg Pub. Sch. Dist.*, 549 F.3d 985, 997 (5th Cir. 2008) (citations omitted). Title VII,

11

however, allows the Court, in its discretion, to award reasonable attorneys' fees to a prevailing party, but only if "the plaintiff's action was frivolous, unreasonable, or without foundation." *See Stover v. Hattiesburg Pub. Sch. Dist.*, 549 F.3d 985, 997 (5th Cir. 2008) (citing *Christiansburg Garment Co. v. EEOC*, 434 U.S. 412, 418–19 (1978)); *see also* 42 U.S.C. § 2000e-5(k). So does the LEDL. *See* La. R.S. § 23:303(B) ("A plaintiff found by a court to have brought a frivolous claim under this Chapter shall be held liable to the defendant for reasonable damages incurred as a result of the claim, reasonable attorney fees, and court costs.").

But we must "resist the understandable temptation to engage in *post hoc* reasoning by concluding that, because a plaintiff did not ultimately prevail, his action must have been unreasonable or without foundation." *Id.* (quoting *Christiansburg Garment Co.*, 434 U.S. at 421–22). And "[t]he fact that a plaintiff may ultimately lose is not in itself sufficient justification for the assessment of fees." *Harris v. Hill*, No. 21-1280, 2021 WL 3236356, at *5 (W.D. La. July 14, 2021), *report and recommendation adopted*, No. 21-1280, 2021 WL 3260057 (W.D. La. July 29, 2021) (citing *Hughes v. Rowe*, 449 U.S. 5, 14 (1980)). "In determining whether a plaintiff's claims are frivolous, courts should consider 'whether the plaintiff established a prima facie case, whether the defendant offered to settle, and whether the court held a full trial.'" *Badgerow v. REJ Props., Inc.*, 974 F.3d 610, 621 (5th Cir. 2020) (quoting *Myers v. City of West Monroe*, 211 F.3d 289, 292 (5th Cir. 2000)).

The issue here is that Title VII does not impose liability against individuals, only employers, *see Smith*, 298 F.3d at 448–49, which must have been known from

the outset of this suit. *See Provensal v. Gaspard*, 524 F. App'x 974, 977 (5th Cir. 2013). While Breithaupt has not engaged in any settlement offers, *see* R. Doc. 15 at 6, and a trial has yet to occur, Title VII and the LEDL claims against Breithaupt are frivolous, and Breithaupt may recover attorneys' fees for the defense of those claims. *See Provensal*, 524 F. App'x at 977; *Payne v. Univ. of S. Mississippi*, 681 F. App'x 384, 389 (5th Cir. 2017); *Trevillion v. Union Pac. R.R.*, No. 18-610, 2019 WL 2064516, at *3 (W.D. La. Apr. 12, 2019), *report and recommendation adopted*, No. 18-610, 2019 WL 2064449 (W.D. La. May 9, 2019).

## II.   Plaintiff's Claims Against CAM

CAM seeks to dismiss Plaintiff's claims as prescribed or, in the alternative, moves for a more definite statement. *See* R. Doc. 8-1 at 1. CAM also seeks to dismiss Plaintiff's civil conspiracy claim. *See id.* Plaintiff believes that his claims were not prescribed at the time of filing and further asserts that his Petition is not vague or ambiguous but aligns with Rule 8 of the Federal Rules of Civil Procedure. *See* R. Doc. 12 at 2.

### A. Prescription

A party asserting prescription bears the burden of proving that the claim has prescribed. *See Gray v. State Farm Fire & Casualty Co.*, No. 23-1053, 2025 WL 1213860, at *2 (W.D. La. Apr. 25, 2025) (internal citation omitted). However, when prescription is evident on the face of a plaintiff's complaint, the burden shifts to the plaintiff to demonstrate that prescription has not run. *See Richard v. Wal-Mart Stores, Inc.*, 559 F.3d 341, 345 (5th Cir. 2009) (citing *Wimberly v. Gatch*, 635 So. 2d

206, 211 (La. 4/11/94)); *see also Mallett v. McNeal*, 939 So. 2d 1254, 1258 (La. 10/17/06) ("The burden of proof on the prescription issue lies with the party asserting it unless the plaintiff's claim is barred on its face, in which case the burden shifts to the plaintiff.") (citing *Bailey v. Khoury*, 891 So. 2d 1268, 1275 (La. 1/20/05)).

### 1.  LEDL Claims

Under the LEDL, a plaintiff's discrimination claims are subject to a one-year prescriptive period. La. R.S. § 23:303(D). This one-year prescriptive period commences on the day the act of discrimination occurs[,]" which includes "failures to promote." *See Foreman v. Our Lady of Lourdes Reg'l Med. Ctr., Inc.*, No. 13-780, 2013 WL 5410135, at *4 (W.D. La. Sept. 25, 2013). This period, however, "shall be suspended during the pendency of any administrative review or investigation of the claim conducted by the federal Equal Employment Opportunity Commission." *See* La. R.S. § 23:303(D). The suspension, however, shall not exceed six months. *See id.* Therefore, the maximum prescriptive period is eighteen months if the plaintiff filed a complaint with the Equal Employment Opportunity Commission ("EEOC"). *See Bellow v. Bd. of Sup'rs of Louisiana State Univ. & Agr. & Mech. Coll.*, 913 F. Supp. 2d 279, 289 (E.D. La. 2012).

Here, CAM contends that Plaintiff's claims arising under the LEDL for failure to promote and sexual harassment prescribed prior to suit being filed. *See* R. Doc. 8-1 at 3–4. CAM asserts that prescription began to run in early 2024, after the sexual harassment and failure to promotion allegations, *see id.*, and prescribed in August 2025, assuming an eighteenth month suspension under La. R.S. § 23:303(D). *See* R.

Doc. 18 at 2. Without addressing the failure to promote claims, Plaintiff argues, however, that the filing of his EEOC complaint sufficiently suspended prescription. *See* R. Doc. 12 at 3. He also asserts that the prescriptive period commenced from the most recent incident of sexual harassment, which occurred in November 2024. *See id.* at 3–4.

Plaintiff vaguely alleges that CAM failed to promote him twice—once in early 2024, *see* R. Doc. 1-2 at ¶ 15, and once more in February 2024, *see id.* at ¶ 16. He then filed suit on September 22, 2025. *See* R. Doc. 1-2. For the first allegation, we cannot adequately determine when the decision not to promote occurred. Put differently, it is not evident from the face of Plaintiff's Petition whether the failure to promote in "early 2024" has prescribed. Thus, it is CAM's burden to establish prescription. *See Gray*, 2025 WL 1213860, at *2. And CAM has not met its burden. *See Johnson v. Hosp. Corp. of Am.*, No. 09-0113, 2009 WL 3648448, at *13 (W.D. La. Nov. 3, 2009) (movant failed to establish when prescription began to run).

As for the second failure to promote claim, it is time barred. We will assume that the decision in "February 2024" occurred on February 29, 2024—the last day in February.[2] Plaintiff, in his opposition memorandum, stated that he filed an EEOC charge on December 4, 2024, and later received a right-to-sue letter from the EEOC on June 23, 2025. *See* R. Doc. 12 at 4. Therefore, the one-year prescriptive period was suspended while the EEOC was reviewing his charge from December 4, 2024, until

---

[2] We must assume "all well-pleaded facts as true, viewing them in the light most favorable" to Plaintiff. *See Nevarez*, 135 F.4th at 271 n.1. For the purposes of this Motion, we assume the last day in February in Plaintiff's favor.

the EEOC issued its right-to-sue letter, on June 23, 2025. *See Briggs v. Fla. Pars. Juv. Just. Comm'n.*, 244 So. 3d 438, 440 (La. Ct. App. 1st Cir. 3/12/18). Before filing his EEOC charge, the prescriptive period ran for 279 days, leaving an additional 86 days to file suit. However, after suspension, Plaintiff waited 91 days before he filed suit on September 22, 2025. Because Plaintiff failed to file suit before the one-year prescriptive period ran, his second failure to promote claim occurring in February 2024 has prescribed. *See Belton v. Geo Grp., Inc.*, No. 19-133, 2021 WL 926197, at *7 (W.D. La. Mar. 10, 2021), *aff'd*, No. 21-30144, 2021 WL 5832953 (5th Cir. Dec. 8, 2021). Accordingly, Plaintiff's failure to promote claim occurring in February 2024 is dismissed as prescribed.

As to Plaintiff's claims under the LEDL for the alleged sexual harassment, CAM argues such claims are also prescribed. See R. Doc. 8-1 at 3–4. CAM points out that Plaintiff's first complaint of sexual harassment occurred in April or May 2023, more than a year before filing suit. *See id.* Correct. The first alleged incident of harassment occurred well outside the one-year prescriptive period, which would ordinarily end our analysis. But we must go further.

A continuing tort is one "where the operating cause of injury is a continuous one and gives rise to successive damages." *Miller v. Conagra, Inc.*, 991 So. 2d 445, 456 (La. 9/8/08) (quoting *Crump v. Sabine River Auth.*, 737 So. 2d 720, 726 (La. 6/29/99)). Based on the Petition, Plaintiff suffered from the alleged offensive conduct—sexual harassment—continuously from April 2023 through November 2024. *See* R. Doc. 1-2 at ¶ 11. Ellis purportedly forced Plaintiff to perform oral sex over one hundred times

and anal sex approximately twenty to thirty times during that span. *See id.* at ¶¶ 11–13. Such allegations, at this stage, "appear to have become actionable as hostile work environment sexual harassment" claims, which under the continuing tort doctrine, were suspended due to their "continuous, cumulative, [and] synergistic nature." *See Michot v. Edward D. Jones & Co., L.P.*, No. 18-921, 2018 WL 11507827, at *4 (W.D. La. Sept. 20, 2018), *report and recommendation adopted*, No. 18-921, 2018 WL 11507826 (W.D. La. Oct. 10, 2018) (citation modified); *see also King v. Phelps Dunbar, L.L.P.*, 743 So. 2d 181, 188 (La. 6/4/99).

Accordingly, Plaintiff's sexual harassment claims under the LEDL remain.

### 2. Negligent Hiring, Supervision, and Retention Claims

In Louisiana, "[d]elictual actions are subject to a liberative prescription of two years," commencing to run "from the day that injury or damage is sustained." La. Civ. Code art. 3493.1. Article 3493.1, however, applies to claims arising on or after its July 1, 2024 effective date. *See* 2024 La. Sess. Law Serv. Act 423 (H.B. 315); *see also Jarrar v. Rockvoan*, 404 So. 3d 1033, 1036 n.4 (La. App. 5 Cir. 1/29/25). Thus, any claim occurring before July 1, 2024, remains governed by the one-year prescriptive period and commences to run from the date of injury. *See* La. Civ. Code art. 3492 (repealed by Acts 2024, No. 423, § 2, eff. July 1, 2024); *Bell v. Walmart*, Inc., No. 24-102, 2025 WL 3516787, at *4 (M.D. La. Dec. 8, 2025); *Roberts v. Benoit*, 605 So. 2d 1032, 1044 (La. 1991).

Plaintiff alleges that he notified Shea of the sexual harassment throughout his time at CAM. *See* R. Doc. 1-2 at ¶ 21. Plaintiff also alleged that he informed

17

Breithaupt of the sexual harassment allegations on October 25, 2024, but that Breithaupt, according to Plaintiff, did not take his concerns seriously. *See id.* at ¶¶ 25–26. Based on these allegations, Plaintiff became aware of a potential negligent hiring, supervision, and retention claim against CAM by October 25, 2024. *See Campo v. Correa*, 828 So. 2d 502, 510 (La. 6/21/02) ("Prescription commences when a plaintiff obtains actual or constructive knowledge of facts indicating to a reasonable person that he or she is the victim of a tort.") (citation omitted); *see also Sterling Res. Corp. v. Welfont Grp., LLC*, No. 21-2517, 2022 WL 4932749, at *6 (W.D. La. Sept. 16, 2022), *report and recommendation adopted*, No. 21-2517, 2022 WL 4921157 (W.D. La. Oct. 3, 2022). Because Plaintiff filed suit within two years of October 25, 2024, *see* R. Doc. 1-2, Plaintiff's negligent hiring, supervision, and training claim against CAM has not prescribed.

### B. Civil Conspiracy

Similar to Breithaupt, Plaintiff's claim of civil conspiracy against CAM also fails because he alleges no agreement made by CAM with any person to commit any tort. *See Ellis v. Pinckley*, No. 22-345, 2023 WL 4417255, at *8 (W.D. La. May 25, 2023), *report and recommendation adopted*, No. 22-0345, 2023 WL 4409100 (W.D. La. July 7, 2023), *aff'd*, No. 25-30065, 2025 WL 3165855 (5th Cir. Nov. 10, 2025); *Sollberger v. Humphries*, No. 23-1023, 2023 WL 6065154, at *6 (E.D. La. Sept. 18, 2023). And whether a civil conspiracy can exist between CAM, a business entity, and its employees is a question left unanswered in Louisiana. *See Currier v. Entergy Servs., Inc.*, No. 11-2208, 2014 WL 4450360, at *3–4 (E.D. La. Sept. 10, 2014)

(collecting cases); *but see Khoobehi Props., LLC v. Baronne Dev. No. 2, L.L.C.*, 216 So. 3d 287, 299 (La. App. 5 Cir. 3/29/17), *writ denied*, 227 So. 3d 288 (La. 9/29/17). Nonetheless, Plaintiff "is willing to withdraw any claims for tortious conspiracy...." *See* R. Doc. 12 at 5. Accordingly, Plaintiff's civil conspiracy claim against CAM is dismissed.

### C. Motion for a More Definite Statement

Lastly, CAM moves for a more definite statement. *See* R. Doc. 8-1 at 5–8. "A party may move for a more definite statement of a pleading to which a responsive pleading is allowed but which is so vague or ambiguous that the party cannot reasonably prepare a response." Fed. R. Civ. P. 12(e). The movant "must point out the defects complained of and the details desired ...." *Id.* "If a complaint is ambiguous or does not contain sufficient information to allow a responsive pleading to be framed, the proper remedy is a motion for a more definite statement under Rule 12(e) ...." *Schlumberger Tech. Corp. v. McReynolds*, No. 15-2455, 2016 WL 4597627, at *2 (W.D. La. Sept. 1, 2016) (citations omitted). To determine whether a complaint is so vague and ambiguous, we look to Rule 8 of the Federal Rules of Civil Procedure, which provides in pertinent part, "A pleading which sets forth a claim for relief ... shall contain ... a short and plain statement of the claim showing the pleader is entitled to relief ...." *See Babcock & Wilcox Co. v. McGriff, Seibels & Williams, Inc.*, 235 F.R.D. 632, 634 (E.D. La. 2006). But, "[g]iven the liberal pleading standard set forth in Rule 8(a), Rule 12(e) motions are disfavored." *Murungi v. Texas Guaranteed*, 646 F. Supp. 2d 804, 811 (E.D. La. 2009) (citations omitted).

19

CAM asserts that Plaintiff's Petition is unclear as to the claims brought against it—their nature, number, and the timeframe of the alleged acts giving rise to the claims. *See* R. Doc. 8-1 at 6. Specifically, CAM avers that the Petition's vague date references regarding the sexual harassment prevent it from determining which Louisiana Civil Code articles apply. *See id.* at 6–7. Plaintiff, on the other hand, claims that his Petition and the dates therein are adequately pleaded under Federal Rule of Civil Procedure 8(a). *See* R. Doc. 12 at 6–7. He contends that CAM's Motion should be denied in favor of discovery. *See id.*

Having reviewed Plaintiff's Petition, we find it to conform with the requirements set forth in Rule 8. CAM is certainly correct that the Petition includes vague date references to the alleged sexual harassment and failure to promote, which required the Court to assume certain dates. *See ante.* But more specificity is not required under Rule 8. *See Babcock*, 235 F.R.D. at 634. And Rule 12(e) is not a substitute for discovery, *see Drewitt v. Brookshire Grocery Co.*, No. 23-850, 2024 WL 313642, at *2 (W.D. La. Jan. 26, 2024) (citing *Babcock*, 235 F.R.D. at 633), which CAM acknowledges. *See* R. Doc. 8-1 at 6. Plaintiff has alleged detailed factual allegations describing the events to which he seeks recovery under Louisiana and federal law. *See generally* R. Doc. 1-2. CAM, therefore, has fair notice of the factual allegations brought against it and enough information to meaningfully respond. And the failure to provide specific dates of some of Plaintiff's allegations "does not render [Plaintiff's] pleading so vague that [CAM] cannot reasonably respond." *Godfrey v. First Student*, No. 23-7377, 2024 WL 2722294, at *2 (E.D. La. May 28, 2024). Rather,

"the details [CAM] seek[s] are matters for discovery, not compulsory amendment of pleadings." *Jones v. Herlin*, No. 12-1978, 2013 WL 823420, at \*7 (W.D. La. Mar. 6, 2013). Accordingly, relief under Rule 12(e) is unwarranted.

### CONCLUSION

For the reasons set forth herein,

**IT IS ORDERED** that Breithaupt's Motion to Dismiss (R. Doc. 5) is **GRANTED**, and all claims brought against Breithaupt are **DISMISSED**.

**IT IS FURTHER ORDERED** that Breithaupt shall file a motion to set reasonable attorneys' fees and costs **within fourteen (14) days**, and any opposition to the motion shall be filed **no later than seven (7) days** from the filing of Breithaupt's motion.

**IT IS FURTHER ORDERED** that CAM's Motion to Dismiss (R. Doc. 8) is **GRANTED IN PART** and **DENIED IN PART**. CAM's Motion is granted insofar as Plaintiff's failure to promote claim under the LEDL that occurred in February 2024 and civil conspiracy claim are dismissed. CAM's Motion is denied in all other respects.

**THUS DONE AND SIGNED** in Chambers this 12th day of June, 2026.

_____
**JERRY EDWARDS, JR.**
**UNITED STATES DISTRICT JUDGE**